CARLSON, Presiding Justice,
for the Court:
¶ 1. We granted certiorari in this case to address the issue of whether, in a driving-under-the-influence trial, the admission of intoxilyzer calibration records, in lieu of the live testimony of the person who calibrated the intoxilyzer, is a violation of the Confrontation Clause contained in the Sixth Amendment to the United States Constitution. Finding no constitutional violation, we affirm the judgments of the Court of Appeals and the Madison County Circuit Court.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. Dr. Andrew K. Matthies lived in Ocean Springs and was stationed at Kees-ler Air Force Base in Biloxi; however, during the period of time relevant to today’s discussion, Matthies was working a rotation as a resident surgeon at the University of Mississippi Medical Center (UMMC) in Jackson, fulfilling a six-week assignment. His temporary residence was at the Marriott Residence Inn on Centre Street in Ridgeland.
¶ 3. Matthies had met Jennifer Gedemer at work. Gedemer invited Matthies to a party hosted by her and her husband in their Madison County home. The party was to take place on Saturday evening, September 13, 2008. Around noon on September 13, 2008, Matthies had completed a thirty-hour shift at UMMC in the kidney transplant service, and he went to his hotel room, where he slept for approximately four hours. Upon awakening from his nap, Matthies prepared for the party and used MapQuest to locate the Gedemers’ home, since he was unfamiliar with the Madison area. Matthies left his hotel room around 6:00 p.m. and traveled to the Gedemers’ home for the party, arriving at approximately 6:30 p.m. By his own admission, Matthies consumed approximately four beers, along with some food. Approximately fifteen guests were in the Gedem-ers’ home that evening.
¶ 4. Upon leaving the Gedemers’ home alone, en route back to his hotel room in Ridgeland, Matthies traveled south on Old Canton Road in Madison. At the time, James Craft, a police officer for the City of *840 Madison, was patrolling northbound on Old Canton Road, approaching Madison Avenue in the City of Madison. Craft observed a Toyota Camry traveling southbound on Old Canton Road, immediately south of the Old Canton Road/Madison Avenue intersection. In this area of Old Canton Road, the posted speed limit was thirty miles per hour. According to Craft, the vehicle appeared to be traveling at an excessive rate of speed, and upon passing the vehicle, Craft activated the rear radar of his patrol car. The radar clocked the speed of the Toyota Camry at fifty-two miles per hour. Craft turned around and pursued the southbound Toyota Camry, eventually initiating a traffic stop on Old Canton Road near Calumet Drive at 11:43 p.m.
¶ 5. Upon request, the driver of the Toyota Camry produced a driver’s license and proof of insurance, revealing the identity of the driver to be Matthies. Craft observed that Matthies’s eyes were red, and Craft smelled an odor of alcohol coming from the interior of the vehicle. Upon interrogation, Matthies admitted to Craft that he had consumed “three or four beers” that evening, with the last beer being consumed about thirty minutes before the traffic stop. Matthies consented to a field sobriety test, including horizontal gaze nystagmus. (See Stodghill v. State, 892 So.2d 236, 238 n. 3 (Miss.2005)). After conducting this test, Craft suspected that Matthies was impaired due to alcohol and thus, administered the preliminary breath test, in which Matthies tested positive for the presence of alcohol in his system. Craft handcuffed Matthies and transported him to the City of Madison Police Department to conduct an intoxilyzer test.
¶ 6. Officer Craft is authorized to conduct tests on the equipment known as the Intoxilyzer-Alcohol Analyzer Model 8000. Craft followed the normal procedures in administering the intoxilyzer test on Mat-thies. These tests determined that Mat-thies had a blood alcohol content (BAC) of 0.11%, that being above the legal limit of 0.08% in the State of Mississippi.
¶ 7. Matthies was charged with driving under the influence (DUI) (first offense) and entered a plea of nolo contendere to that charge in the City of Madison Municipal Court, Judge Cynthia Speetjens presiding. Judge Speetjens adjudicated Mat-thies guilty of the crime of DUI (first offense), and sentenced Matthies to suspended jail time, a fine, and court costs. Matthies also was required to satisfactorily complete the Mississippi Alcohol Safety Education Program (MASEP). Matthies then appealed to the County Court of Madison County and received a trial de novo conducted by Judge William S. Agin without a jury. During the bench trial, Officer Craft testified concerning the in-toxilyzer test and Matthies’s BAC. Intoxi-lyzer calibration certificates were admitted over Matthies’s Confrontation-Clause objection. These certificates, each entitled “Intoxilyzer 8000 Calibration Certificate,” and completed on September 1, 2008, and October 2, 2008, respectively, indicated, inter alia, that:
The above instrument, used for breath analysis to determine alcohol content, was tested on below date and found to be in working condition. Calibration of instrument certified to meet acceptable standards of accuracy. This certificate approved by the Mississippi State Crime Laboratory pursuant to Implied Consent Act, Sec. 63-11-19, Mississippi Code of 1972, Annotated.
Both certificates were signed by Robert Bickley, who did not testify at the trial before Judge Agin.
¶ 8. At the county-court trial, Matthies also contested the prosecutor’s allegation that his alcohol consumption that evening *841 had caused him to be legally impaired to operate a motor vehicle. Without objection, Matthies testified at length, based on his medical expertise, on such matters as the effect of alcohol consumption on different people based on body mass index, gender, food intake, and the amount of alcohol consumed over a certain period of time. Matthies also enumerated the medical reasons or conditions, other than alcohol consumption, that could cause a person to have red eyes. He explained the reasons why he had performed poorly during the horizontal-gaze nystagmus test (walk and turn, and one leg stand). Matthies explained that he had sports-related injuries, and his footwear caused an occasional loss of balance.
¶ 9. At the conclusion of the bench trial, Judge Agin found Matthies guilty of DUI (first offense) and sentenced Matthies, inter alia, to a forty-eight-hour jail sentence, suspended; completion of the MASEP program; unsupervised probation for a two-year period; and payment of certain costs, fees, and assessments, which were due within sixty days of the date of the judgment. Judge Agin’s final judgment was dated July 14, 2009, and entered on July 15, 2009. Thereafter, Matthies timely filed an appeal to the Circuit Court of Madison County. In due course, under the provisions of Mississippi Code Section 11-51-81 (Rev. 2002), the Circuit Court of Madison County, sitting as an appellate court, Judge William E. Chapman, III, presiding, entered an Order and Opinion affirming the county-court conviction and remanding the case to the County Court of Madison County for execution of the county court’s final judgment. Under the provisions of Section 11-51-81, Matthies filed a motion for allowance asking the circuit court to permit him to appeal the circuit court’s judgment to this Court. On April 12, 2010, Judge Chapman entered an order allowing an appeal to this Court, and Mat-thies timely appealed to us. We assigned this case to the Court of Appeals.
¶ 10. Before proceeding further, we pause to note that, although Matthies’s counsel and Judge Chapman correctly proceeded under Section 11-51-81 concerning permission to proceed to this Court on appeal after Judge Chapman, sitting as an appellate judge under the statute, had affirmed the county-court judgment, such permission is no longer required under the “three-court rule” based on our decision handed down more than seven months after Judge Chapman’s entry of the order allowing an appeal to this Court. See Jones v. City of Ridgeland, 48 So.3d 530, 538-39 (Miss.2010).
PROCEEDINGS IN THE COURT OF APPEALS
¶ 11. The Court of Appeals reviewed the recent caselaw of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009), concerning testimonial statements. The Court of Appeals found the certificates in the instant case to be distinguishable from the records in those cases. See Matthies v. State, 85 So.3d 872, 875 (¶ 13) (Miss.Ct. App.2011).
¶ 12. Furthermore, since Melendez-Diaz did not expressly address the instant question, the Court of Appeals examined the persuasive opinions of other jurisdictions. The Court of Appeals determined that most courts which had examined the question of intoxilyzer calibration records had found them to be nontestimonial in nature. Matthies, 85 So.3d 872, 875 (¶ 11). The Court of Appeals found that the certificates at issue were nontestimonial, and therefore Matthies’s Confrontation-Clause *842 rights had not been violated. Matthies, 85 So.3d 872, 875-76 (¶ 14).
DISCUSSION
¶ 13. In his petition for writ of certiora-ri, Matthies argues that the intoxilyzer certificates presented at his trial were testimonial in nature and thus subject to the protections of the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution. The Attorney General did not oppose granting certiorari and invited this Court “to uphold the integrity of the decision of the Court of Appeals,” since the case requires the resolution of a substantial question of law of general significance. See M.R.A.P. 17(a). We granted the petition so this Court could address the question in the light of recent United States Supreme Court decisions.
¶ 14. The Confrontation Clause provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]” U.S. Const, amend. VI. It is applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Matthies admits that this Court has rejected his argument in the past. Harkins v. State, 735 So.2d 317, 319 (Miss.1999). In Harkins, this Court determined that admitting the “calibration certificates [for the intoxilyzer] without testimony from the calibration officer does not, in general, violate ... the confrontation clauses in the Mississippi or United States constitutions.... ” Harkins, 735 So.2d at 321. However, Matthies urges this Court to consider more recent precedent from the United States Supreme Court post-Harkins.
¶ 15. In Crawford, v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court introduced the rule that, when an out-of-court statement is testimonial, it is inadmissible unless (1) the declarant is unable to testify, and (2) the defendant had a prior opportunity to -examine the defendant. The Supreme Court has not provided a comprehensive definition of “testimonial” statements, complicating Confrontation-Clause analysis. However, the Supreme Court did note that “[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.” Crawford, 541 U.S. at 68, 124 S.Ct. 1354.
¶ 16. In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009), a Supreme Court plurality held that a Confrontation-Clause violation occurred when “certificates of analysis” of the chemical content of a drug were admitted without the testimony of the lab analyst who prepared them. Melendez-Diaz involved certificates of analysis finding that a suspicious substance was cocaine, with these certificates being sworn to by analysts at a state laboratory. Id. at 2531. The analysts who examined the substance did not appear in person at trial. Id. The Supreme Court found that these certificates were testimonial, and that the defendant’s Confrontation-Clause rights were violated, since these analysts did not testify. Id. at 2542. But the Supreme Court also stated that it does “not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device-, must appear in person as part of the prosecution’s case.” Id. at 2532, n. 1.
*843 ¶ 17. The Court of Appeals did not address the United States Supreme Court’s decision in Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 2706, 180 L.Ed.2d 610 (2011). However, there is good reason for this. The Court of Appeals’ decision in today’s case was handed down on May 31, 2011, and Bull-coming was not decided until June 23, 2011. Matthies’s counsel filed a motion for rehearing with the Court of Appeals on June 13, 2011, ten days before Bullcoming was decided. Although the Court of Appeals did not enter an order denying Mat-thies’s motion for rehearing until September 27, 2011, which was more than three months after Bullcoming was decided, Matthies made no effort between June 23, 2011, and September 27, 2011, to inform the Court of Appeals of the United States Supreme Court’s decision in Bullcoming. No supplemental brief nor any supplemental pleading was filed by Matthies to call to the Court of Appeals’ attention this intervening decision by the Supreme Court. It is incumbent upon a party on appeal to provide to the appellate court citation to authority in support of the party’s argument. See, e.g., Knight v. Terrell, 961 So.2d 30, 32 (Miss.2007); Rigby v. State, 826 So.2d 694, 707-08 (Miss.2002).
¶ 18. For the first time, in his petition for writ of certiorari, Matthies cites Bull-coming as authority for his Confrontation-Clause argument. Bullcoming affirmed that certificates relating to the analysis of the BAC level in a defendant’s blood may be testimonial in nature. Id. at 2711. Unlike the instant case, however, the test in Bullcoming involved a forensic laboratory report of the defendant’s blood. Id. Where the analyst who had administered that test was not called at trial, but instead replaced by a different scientist who had neither observed nor reviewed the test, the defendant’s Confrontation-Clause rights were violated. Id. at 2718. The instant case is distinguished from Bull-coming in that it relates to the analyst who prepared certificates of the calibration for the intoxilyzer device, not the analyst who conducted the intoxilyzer test itself. Neither Melendez-Diaz, nor Bullcoming, nor any other United States Supreme Court ease expressly addresses the issue of whether intoxilyzer calibration records are testimonial in nature.
¶ 19. However, the Court of Appeals examined the application to this question in a number of other jurisdictions in the wake of Melendez-Diaz. The Court of Appeals found that the wide majority of appellate courts examining this question found such records to be nontestimonial. Matthies, 85 So.3d 872, 875 (¶ 11) (citing United States v. Forstell, 656 F.Supp.2d 578, 580-82 (E.D.Va.2009); State v. Lindner, 227 Ariz. 69, 252 P.3d 1033, 1035-1036 (Ariz.App. Div. 1, 2010); Jacobson v. State, 306 Ga.App. 815, 703 S.E.2d 376, 379 (Ga. App.2010); People v. Jacobs, 405 Ill. App.3d 210, 345 Ill.Dec. 335, 939 N.E.2d 64, 71-72 (Ill.App. 4 Dist., 2010); Ramirez v. State, 928 N.E.2d 214, 219-20 (Ind.App. 2010); State v. Johnson, 43 Kan.App.2d 815, 233 P.3d 290, 299 (Kan.App.2010); Settlemire v. State, 323 S.W.3d 520, 521-22 (Tex.App.2010); State v. Bergin, 231 Or. App. 36, 217 P.3d 1087, 1089 (Or.App. 2009); and Hamilton v. State, 2010 WL 4260608, *3 (Alaska CtApp. Oct.27, 2010) (unreported decision)). But see United States v. Gorder, 726 F.Supp.2d 1307, 1314 (D.Utah 2010) (finding “Intoxilyzer 8000 Operational Checklist” testimonial). In particular, the Court of Appeals cited the persuasive authority of Ramirez, 928 N.E.2d at 219, for the proposition that, as calibration records are completed in advance of specific drunk-driving incidents, they are not testimonial in nature. Matthies, 85 So.3d 872, 875 (¶ 12). The Court of Appeals determined that “[cjourts hav *844 ing occasion to consider intoxilyzer inspection, maintenance, or calibration records post -Melendez-Diaz have almost uniformly agreed that such records are nontestimonial in nature.” Matthies, 85 So.3d 872, 875 (¶ 11). We agree with the Court of Appeals. Accordingly, today, we specifically state that records pertaining to intoxilyzer inspection, maintenance, or calibration are indeed nontestimonial in nature, and thus, their admission into evidence is not viola-tive of the Confrontation Clause of the Sixth Amendment. We are firmly convinced that our decision today is not in conflict with Crawford, Melendez-Diaz, or Bullcoming.
¶ 20. Officer Craft, who administered all relevant tests on Matthies, testified at trial. Robert Bickley, the individual not testifying at trial, only calibrated the intox-ilyzer. Melendez-Diaz explicitly held that “it is not the case, that anyone whose testimony may be relevant in establishing the ... accuracy of the testing device, must appear in person as part of the prosecution’s case.” Melendez-Diaz, 129 S.Ct. at 2532, n. 1.
¶ 21. The opposite holding — that the testimony of an individual as far removed from the prosecution as the calibrator of the intoxilyzer, is required at trial — would dramatically expand the holdings of Crawford, Melendez-Diaz, and Bullcoming. This interpretation of these cases has been rejected by almost every appellate court that has examined this question.
CONCLUSION
¶ 22. While we agree with the discussion and disposition of the Court of Appeals in today’s case, we chose to take this opportunity to address this particular issue in the wake of the United States Supreme Court’s decisions, not only in the recently-decided Bullcoming, but also in Crawford and Melendez-Diaz. We have found that intoxilyzer calibration certificates are non-testimonial in nature. Therefore, Mat-thies’s Confrontation-Clause rights were not violated. The judgments of the Court of Appeals and the Madison County Circuit Court are affirmed.
¶ 23. CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT (48) HOURS IN THE MADISON COUNTY JAIL, SUSPENDED, TWO (2) YEARS UNSUPERVISED PROBATION UNLESS SOONER INVOKED WITH SPECIFIC CONDITIONS, PAY COURT COSTS, FEES, AND ASSESSMENTS, AND PAY A FINE OF $700, AFFIRMED.
WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ„ CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.