HAYNES, Circuit Judge,
dissenting:
The majority opinion correctly notes that we review the district court’s factual findings for clear error and its legal conclusions de novo. See United States v. Jenson, 462 F.3d 399, 403 (5th Cir.2006). However, the majority opinion fails to give appropriate deference to the district court’s credibility determinations and resulting factual findings and also incorrectly assesses Mississippi law. Viewed properly, the district court order did not commit reversible error in its order suppressing *253 evidence. Accordingly, I respectfully dissent.
We must review the district court’s findings of fact for clear error, only disregarding them when, “on the entire evidence[,] [this court] is left with a firm, and definite conviction that a mistake .has been committed.” United States v. Gomez-Moreno, 479 F.3d 350, 354 (5th Cir.2007) (citation and internal quotation marks omitted) (emphasis added); see United States v. Raney, 633 F.3d 385, 389 (5th Cir.2011) (“A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole.” (citation and internal quotation marks omitted)). When factual findings derive from live testimony and credibility determinations, district courts are afforded even more deference. See, e.g., United States v. Robinson, 741 F.3d 588, 594 (5th Cir.2014); United States v. Gibbs, 421 F.3d 352, 357 (5th Cir.2005) (“‘One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses.’” (quoting Louis v. Blackburn, 630 F.2d 1105, 1109 (5th Cir.1980))). Finally, we “may affirm on any basis established by the record, considering the evidence presented at the suppression hearing in the light most favorable to the prevailing party.” United States v. Aguirre, 664 F.3d 606, 610 (5th Cir.2011) (citations and internal quotation marks omitted); United States v. Scroggins, 599 F.3d 433, 440 (5th Cir.2010) (citations and internal quotation marks omitted).
Two pieces of evidence are relevant to the determination of the propriety of this stop and resultant findings: the trooper’s testimony and the videotape he recorded. The district-court found the trooper not to be credible: it; was “not convinced that the testimony of the trooper was credible.” Thus, we cannot reverse the district court based upon testimony of the trooper as the district court is entitled to make the credibility determinations based upon its live assessment of the witness. See Robinson, 741 F.3d at 594; Gibbs, 421 F.3d at 357.
Turning to the video, it shows Rosales-Giron’s van driving close to the right-hand edge of the lane, but does not definitively show the van touching the fog line; it certainly does not show the van swerving within its lane or crossing the fog line. We should defer to the district court’s findings that “the only justification that this officer makes for stopping this particular car” was, as “the video shows[,] that while the trooper was up beside the van, the van didn’t swerve; simply moved over and happened to run onto the fog line.”[1] Accordingly, under a particularly deferential clear error standard, I am certainly' not left with a firm and definite conviction that the district court erred in finding, at most, a “run onto the fog line.”
Considering only this alleged violation as we are bound to do, it becomes clear that, at most, “while the trooper was up beside the van, the van didn’t swerve; simply moved over and happened to run onto the fog line.” (emphasis added). The trooper admitted during the hearing that, during all of the violations he alleged, the van was only “on [the fog line]. I don’t know that [the van] crossed it, but [it] hit *254 it.” Thus, we turn to the question of law: whether one instance of hitting or moving onto the fog line constitutes careless driving under Mississippi law. It does not. A careful reading of Mississippi case law interpreting the careless driving statute shows that simply bumping or hitting the fog line by itself does not suffice to justify a careless-driving finding; instead, all the cases involve additional conduct. See generally Miss.Code Ann. § 63-3-1213.[2]
Indeed, every single Mississippi case supporting a finding of careless driving involves more serious and imprudent conduct than bumping the fog line one time.[3] Even in cases upholding traffic stops based on the most minimal conduct, drivers at least weaved or definitively crossed the fog line, rather than simply bumping it. See, e.g., Williams v. State, 126 So.3d 85, 89 (Miss.Ct.App.2013) (finding reasonable suspicion justified a traffic stop where a vehicle “weave[d] out of [its] lane of traffic and across the fog line”); Tran v. State, 963 So.2d 1, 13-14 (Miss.Ct.App.2006) (holding officer had a reasonable basis to stop a motorist for “crossing the fog line” and that “failure to have regard for the width and use of the street by swerving off the side of the road or crossing the marker lines constitutes probable cause for a traffic stop”) (emphasis added), aff'd sub nom. Quang Thanh Tran v. State, 962 So.2d 1237 (Miss.2007); Adams v. City of Booneville, 910 So.2d 720, 721, 725 (Miss.Ct.App.2005) (finding probable cause for a careless-driving stop in the totality of the circumstances, considering the defendant’s car was “traveling in the middle of two lanes of traffic” and “swerv[ing]” “around 2:30 a.m.” on “New Year’s Day”); Saucier v. City of Poplarville, 858 So.2d 933, 934 (Miss.Ct.App.2003) (finding probable cause where a vehicle decreased its speed, “bump [ed] the centerline,” then crossed “into the center lane and jerked ... back into the right lane”). No Mississippi case validating a careless-driving traffic stop *255 involves only the minimal conduct present here.[4]
The majority opinion also cites a case for the proposition that under Mississippi law, “a court must reasonably interpret a wide range of factors when determining carelessness under the careless-driving statute.” See Henderson v. State, 878 So.2d 246, 247 (Miss.Ct.App.2004) (finding probable cause where a vehicle almost hit a curb, stopped at a stop sign, and then almost hit another curb in the early morning hours). No “wide-ranging” factors are present here: at most, there is one bump of the fog line. Cf. Saucier, 858 So.2d at 934-35 (comparing case law and noting “there was not a one-time and brief drifting across the painted stripe separating lanes ... but [ ] multiple intrusions] across the dividing stripe on the highway,” and that “[t]he frequency of the failure to maintain the proper lane suggests a greater degree of risk and carelessness,” as does crossing “into the lane for traffic going the opposite direction”).
Although we employ de novo review of the legal question, determining what constitutes “due regard for the width ... and use of the streets” and what it means to “drive [ ] any vehicle in a careless or imprudent manner” requires consideration of a wide range of factors, including some that are inherently based on factual findings. Miss.Code Ann. § 63-3-1213; see also Henderson, 878 So.2d at 247. In analogous contexts, we have allowed district courts to assess a defendant’s conduct in light of the pursuing officer’s actions. Here, the trooper’s vehicle was stationed alongside the van, potentially very close to the centerline. Our own case law shows that this court may account for the effect of an officer’s presence immediately behind or beside a defendant’s vehicle when analyzing that defendant’s driving behavior. Cf. United States v. Rivera-Gonzalez, 413 Fed.Appx. 736, 739-40 (5th Cir.2011) (unpublished) (noting that “when the officer’s actions are such that any driver, whether innocent or guilty, would be preoccupied with his presence, then any inference that might be drawn from the driver’s behavior is destroyed,” and that even “abnormal turn-signaling might qualify as innocent” because “[e]ven an innocent driver • wondering why a Border Patrol car is following for several miles might forget to turn off a turn signal.” (citations and internal quotation marks omitted)).[5]
*256 To the extent that the majority opinion concludes that the district court’s findings are unclear, the proper remedy is a remand for clarification, not reversal. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 386, 388, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008) (vacating with instructions to remand to the district court for clarification, holding that “[w]hen a district court’s language is ambiguous, as it was here, it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion. A remand directing the district court to clarify its order is generally permissible and would have been the better approach in this case”); cf. Gomez-Moreno, 479 F.3d at 354. As it stands, I conclude that the record and the district court’s findings are sufficiently clear to distinguish this case from every other Mississippi case that has condoned a traffic stop for careless driving based on a driver’s interaction with the fog line (and more). Reasonably interpreting, carelessness and what it means to give due regard for the width and use of the road in light of a wide range of factors, I disagree with holding that an officer can stop a van in Mississippi simply for bumping the fog line one time. Such a holding to reverse a district court expands the definition of careless driving under § 63-3-1213 beyond the boundary Mississippi courts have drawn.
Because the district court did not err in concluding that the trooper lacked lawful justification to stop Rosales-Giron’s van,[6]1 would affirm the district court’s suppression of evidence. Accordingly, I respectfully dissent from the judgment of the court reversing the district court.

. The district court appears to be referring to the first part of the video, from about 0 to 10 seconds. At that point, the video shows the trooper’s car traveling very close to the cen-terline as the van gradually comes into view, with the van driving closer to the fog line and keeping a distance between itself and the trooper’s car as the trooper’s car drops behind the van.

. I disagree with the majority opinion’s suggestion that I need the support of a Mississippi case holding that bumping the fog line once does not justify a stop in order to affirm the district court's conclusion that the stop was unreasonable under the Fourth Amendment. The touchstone of our Fourth Amendment analysis is reasonableness, considering how state law classifies the allegedly illegal conduct. See Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (“We have long held that the touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.” (citations and internal quotation marks omitted)). When we give proper deference to the trial court’s factual findings, Rosales-Giron’s conduct included only one bump of the fog line. Since no Mississippi court has found a careless driving stop justified for just one bump of the fog line without additional conduct, I agree with the district court’s conclusion that it was objectively unreasonable for the trooper to stop Rosales-Giron's van under the totality of the circumstances.

. See, e.g., Ludwig v. State, 122 So.3d 1229, 1231-33 (Miss.Ct.App.2013) (finding probable cause where a defendant drove so close to the edge of the road that "the mirror could have struck the officer” standing there conducting a traffic stop, before the vehicle ran off the road onto the shoulder twice and the defendant admitted to running off the road (internal quotation marks omitted)); Shelton v. State, 45 So.3d 1203, 1208-09 (Miss.Ct.App.2010) (finding probable cause where a vehicle crossed the fog line, then overcompensated to cross the lane-dividing lines, then repeated this pattern); Drummer v. State, 42 So.3d 563, 564-65 (Miss.Ct.App.2009) (finding probable cause where a vehicle weaved from the outside of the lane and across the center yellow lines more than once in a residential area); Loveless v. City of Booneville, 972 So.2d 723, 724-25, 731 (Miss.Ct.App.2007) (finding probable cause where a vehicle blared loud music at a stop sign, then crossed the centerline of the road with both driver's side tires as it proceeded down the road).

. In Dominick v. State, the trial court credited an officer’s testimony that a car changed lanes, "bumped or simply rode the fog line,” and then changed lanes again, "bump[ing] the center line to the right” after changing lanes. 108 So.3d 452, 456 (Miss.Ct.App.2012) (internal quotation marks omitted). The Mississippi Court of Appeals acknowledged that the trial judge had credited the officer’s testimony, that video evidence proved unclear, and that nothing contradicted the officer’s testimony before affirming the trial court's finding that the officer had probable cause to stop the vehicle. Id. In Martin v. State, a trooper observed a car swerve and drift over the fog line: the "vehicle went from point A to point B and right back. [It] didn’t [simply] drift over to the fog line.” 43 So.3d 533, 535 (Miss.Ct.App.2010) (internal quotation marks omitted). The Mississippi Court of Appeals thus upheld the trial court’s finding of probable cause. Id.

. Although Rivera-Gonzalez is not “controlling precedent,” it "may be [cited as] persuasive authority.” Ballard v. Burton, 444 F.3d 391, 401 n. 7 (5th Cir.2006) (citing 5th Cir. R. 47.5.4). For cases where this court has taken account of an officer’s presence in exámining a defendant’s driving behavior, see also United States v. Zapata-Ibarra, 212 F.3d 877, 882-83 (5th Cir.2000) (finding that deceleration of a vehicle and its swerving within its lane only slightly supported reasonable suspicion when the vehicle did so in reaction to a rapidly-approaching police car that had activated its high-beam lights); United States v. Jones, 149 F.3d 364, 370-71 (5th Cir.1998) (finding that a driver’s act in drifting off the roadway did not give rise to reasonable suspicion in the *256 totality of the circumstances, because the driver was glancing back at the officer, who was tail-gaiting the driver).

. Of course, I agree with the majority, opinion that the trooper’s subjective intentions in making the traffic stop play no part in the probable cause analysis and that the district court should not have discussed them. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("Subjec-five intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); United States v. Cole, 444 F.3d 688, 689 (5th Cir.2006). Again, if we are concerned about whether this mention of subjective intent affected the district court’s conclusions, we should remand, not reverse. See Sprint/United Mgmt. Co., 552 U.S. at 386, 388, 128 S.Ct. 1140.